355 P.2d 128

**John MERSHON and Bernie Bounds, Plaintiffs-Appellants,**

v.

**John B. NEFF, Thomas C. Patterson, J. C. Pender, Jane Perrenot and Vivian Hamilton, Individually and as Members of the Official Board of Directors of the Cloudcroft Directory, Defendants-Appellees,**

**J. O. Frilick, Sr., and Ruby V. Frilick, his wife, J. O. Frilick, Jr., a single man, J. C. Read and Josephine Read, his wife, A. D. McLean, a/k/a Allen D. McLean, and Barbara A. McLean, his wife, David L. C. Hover and Helen Hover, his wife, Abe Zicafoose and Flossie Zicafoose, his wife, T. B. Longwell, a single man, and R. F. Anderson, Intervenors-Appellees.**

**No. 6617.**

Supreme Court of New Mexico.

Sept. 8, 1960.

312

Brenton, Boyce & Wilkinson, John P. Otto, Alamogordo, Grantham, Spann & Sanchez, Albuquerque, for appellants.

Garland & Martin, Las Cruces, for defendants-appellees.

John H. Lawless, Jr., Alamogordo, for intervenors-appellees.

MOISE, Justice.

The appellants filed an action seeking a declaratory judgment to the effect that the restrictive covenants imposed in the deeds to Block 1 of the Place of Cloudcroft are no longer applicable thereto and accordingly should be cancelled.

Appellants are successors in interest to P. B. Hendricks, having acquired Block 1 (except certain described pieces) by purchase in 1957. P. B. Hendricks was defendant in a previous action tried in 1951 wherein he was enjoined from violating the restrictive covenants prohibiting use of the property for purposes of trade or commerce. In that action, the Board of Directors of the Cloudcroft Directory (the governing organization of Cloudcroft provided for in the plan devised by the company which platted Cloudcroft) brought suit to enjoin violation of the restrictions against commercial use by operating a gasoline filling station and were granted an injunction. This action was affirmed by this court in Neff v. Hendricks, 57 N.M. 440, 259 P.2d 1025, decided August 6, 1953. Appellants purchased with full knowledge of the restrictions and of the earlier case.

Appellees are the defendants and intervenors below. The named defendants were the duly elected Board of Directors of the Cloudcroft Directory and were named as

representatives of the owners of lots and property in Cloudcroft.

Certain owners of lots in Cloudcroft and in North Cloudcroft, a separate subdivision lying immediately north of Block 1 of Cloudcroft, were permitted to intervene, and are likewise appellees herein.

The case was tried to the court, which made findings of fact and conclusions of law deciding the issues in favor of defendants and intervenors (appellees) and dismissing the complaint. From the judgment entered pursuant thereto, this appeal is prosecuted.

Among others, the court made the following findings of fact and conclusions of law:

"4.. That the dedicators of the plat covering the real estate known as the place of Cloudcroft, established a general plan or scheme at the time the plat was filed for the purpose of creating and maintaining a high-class summer resort in which they imposed certain restrictions on the property located in that area; that said restrictions have never been abandoned, rescinded or modified and are still in full force and effect; that one of the restrictions imposed upon said place of Cloudcroft, including the above described portion of Block One (1) owned by the Plaintiffs, John Mershon and Bernie Bounds, is as follows:

"'And that such premises or any part thereof shall never be used for immoral purposes or for purposes of trade or commerce, boarding houses and hotels excepted;'

"5. That the deeds of conveyance by which lands in said restricted area known as the place of Cloudcroft, were conveyed to the owners of lands therein, uniformally contained this restricted condition:

"'* * * and that such premises or any part thereof shall never be used for immoral purposes or for purposes of trade or commerce, boarding houses and hotels excepted.'

and said restrictions have been by the owners of the real estate in said area, together with purchasers of portions thereof, uniformly respected and observed and have been enforced at all times with the exception of minor infractions for brief periods of time; and none of such infractions are sufficient to constitute a waiver or abandonment of the general scheme or plan for the purposes for which they were imposed upon said area.

"6. That the dedicators of the plat covering aforementioned restrictions, at the same time as they dedicated the land in the place of Cloudcroft, also dedicated an area of land known as North Cloudcroft, located north

of and contiguous with the area known as the place of Cloudcroft; that the area known as North Cloudcroft was dedicated without restrictions as to use of the land for trade and commerce.

\*  \*  \*  \*  \*  \*

"9. That the Intervenors, J. O. Frilick, Jr., J. C. Read and Josephine Read, his wife, A. D. McLean and Barbara McLean, his wife, and David L. C. Hoover and Helen Hoover, his wife, as owners or real estate in the area known as North Cloudcroft, have such interest as to entitle them to intervene herein and object to the removal of the restrictive covenants as prayed for in the Plaintiffs' Complaint filed herein.

\*  \*  \*  \*  \*  \*

"15. That the general scheme or plan under which the place of Cloudcroft was originally laid out, and the attending circumstances and situations of the area, all show that the benefits to be derived from such restrictive covenants were intended to benefit the owners of the land in the area known as North Cloudcroft.

"16. That since the original dedication and platting of the place of Cloud-croft, U. S. Highway 83 has been constructed through a portion of said area, including a portion of Block One (1) owned by the Plaintiffs and heretofore described; that as a result of said highway construction there has been a constant increased business activity along the said highway catering to tourists; that there has been an increase in permanent residents in the Cloudcroft area; that the railroad which formerly served the town has been abandoned; that the location of the highway cut off that portion of Block One (1) owned by the Plaintiffs from the rest of the restricted area, making the Plaintiffs' land in question geographically a part of North Cloudcroft; and that the foregoing changes were in existence at the time of the previous decree of this Court in said Cause No. 4937

"17. That the only commercial activity in said Block One (1) is a small restaurant located in the Southeast corner thereof, on the north side of U. S. Highway 83.

"18. That there has been no material change in the neighborhood or area of the place of Cloudcroft since the time of the previous decree of this Court in Cause No. 4937, as to warrant the removal of the restrictive covenants as prayed for in the Plaintiffs' Complaint.

"19. That any changes since the previous decision of this Court in Cause No. 4937 are those incident to the

natural growth of the community and increased highway traffic into and through it.

"20. That the restrictive covenants in question are of substantial benefit to the owners of the lands in the place of Cloudcroft.

### Conclusions of Law

\*   \*   \*   \*   \*   \*

"3. That the previous decision of this Court in Cause No. 4937 as reported on appeal by the Supreme Court of the State of New Mexico in the case of Neff et al. vs. Hendricks et al., 57 N.M. 440, [259 P.2d 1025], is Res Judicata with respect to matters of alleged changes of conditions which occurred prior to said decision.

"4. That there have been no material changes of conditions in the area since the previous decision of this Court in said Cause No. 4937 as would warrant a removal of the restrictive covenants in question from that portion of Block One (1) owned by the Plaintiffs and heretofore described."

Appellants' first point relied upon for reversal is to the effect that the court erred in holding the decision in Neff v. Hendricks, supra, to be res judicata as to changed conditions in Block 1 as of 1951, and in not considering the same in this action.

There is some dispute between the parties as to what the trial court's ruling was in this regard. Appellees assert that the court did admit and consider evidence of changes in the area prior to 1951 and cite the following statement by the court:

"You will be permitted to offer testimony along that line, where it is necessary, in order to understand the situation. References may be made as to conditions which have arisen since. It will, of course, be impossible to understand those situations unless both were referred to. It will, however, be understood that no reference to a condition obtaining prior to the other decree will be entertained unless it is pertinent to a change occurring since then."

On the other hand, appellants call attention to the following statements by the court during the trial:

"Mr. Boyce, I don't see how we can go behind the decree in the prior case."

and

"Mr. Boyce, I believe I asked you to restrict yourself to after 1951."

Probably more to the point are findings 18 and 19 and conclusions 3 and 4, hereinbefore quoted.

█ Although admittedly there is some question as to exactly how the trial court

appraised the previous decision, from the remarks and findings and conclusions set forth above, it seems reasonably certain that he did not consider the situation prior to 1951 in deciding the instant case. He found there had been no material change in the neighborhood since 1951 as to warrant removal of the covenants, and has a conclusion to the same effect.

To our minds, this was not the question. The determination which he was called upon to make was whether there had been such a change in conditions since 1900 when the townsite was platted as to make it inequitable to enforce the restrictions. To answer this question, it was necessary for the court to consider all changes since 1951, and if they, together with changes existing in 1951, would justify lifting of the restrictions, it should be done.

The pertinent law is found in the case of Hurd v. Albert, 214 Cal. 15, 3 P.2d 545, 546, 76 A.L.R. 1348, where the following language is found:

"It is likewise contended by appellants that the judgment in Strong v. Hancock, supra, acts as an estoppel in this action, for the reason that the two cases involve the same property and the same parties, or those privy to them. No such estoppel exists. That case merely decided that, as conditions existed in 1923, a release from the covenant was not warranted. The present judgment is based upon the conditions as they existed in 1928, when this action was tried. The issues raised in the instant case are materially different from those litigated in 1923. As shown by the findings here under consideration, a great many material changes in the conditions affecting the property have occurred since that date. The doctrine of res judicata was never intended to operate so as to prevent a reexamination of the same question between the same parties where, in the interval between the first and second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants. Matter of Snowball, 156 Cal. 240, 104 P. 444; Williamson v. Grider, 97 Ark. 588, 135 S.W. 361; 34 Cor.Jur. 905, § 1313. These cases are also authority for the point that when the second action is tried it is permissible for the court to consider, not only the facts that have occurred since the prior suit, but it may and should consider all the facts that exist, both prior and subsequent to the first action, so as to determine properly what effect all of the facts, as they exist at the time of the second trial, have on the rights of the parties. This rule is a reasonable one, particularly as applied to such cases as the

one here under consideration. A change in the character of any neighborhood from residential to business in nature cannot be said to be the result of any one business invasion. Each separate business structure, when considered together with those already erected, has its effect on the restricted area. The effect of each business structure located near the tract continues until finally the cumulative effect of all the business invasions on the restricted area is such that to enforce the restrictions would be inequitable and oppressive as to one party, and would not materially benefit the other. Obviously, during the period of transformation, there are times when the changes as they then exist are not of such a character or degree as to warrant the court in releasing an owner from the covenant. However, this does not mean that, because a court has occasion to consider the effect of such changes during some early stage of the transformation, such court cannot later consider the effect of the early changes, when coupled with later changes that have taken place.

"The 1923 judgment merely established that at that time the changes were not of such a character or of such a degree as to warrant denying the injunction. It did not establish that the changes up until 1923 had not affected the property at all. We are of the opinion that the trial court properly considered all the changes that had taken place in the surrounding territory from 1905 to 1928."

The similarity between the cases and the pertinency of the language quoted should be obvious. The rule as to the effect of the previous judgment as announced in the quotation is also supported in the Restatement of the Law of Judgments, §§ 54(d) and 68(q).

Appellees would limit the holding in Hurd v. Albert, supra, to a recognition of the right of the court to consider the changed conditions that had occurred between the two lawsuits, and express agreement that this is the law. However, concerning the holding that this should include consideration of changes prior to the decision in the earlier case, they say the cases in the annotation in 76 A.L.R. 1348 do not support the rule, and they then call attention to the case of St. Lo Construction Co. v. Koenigsberger, 84 U.S.App.D.C. 319, 174 F.2d 25, 10 A.L.R.2d 349, which they assert supports their position that occurrences prior to 1951 could not be considered in deciding this case. At first blush, it does appear that this was the holding in that case. However, a closer reading will disclose, we believe, that what the court held was that the previous judgment was res

judicata of the issues as of the date of the judgment. It does not necessarily follow from this that upon showing of change since the previous judgment it would not be proper to consider changes both before and since in passing upon the present day situation.

Whether or not Hurd v. Albert, supra, can be reconciled with St. Lo Construction Co. v. Koenigsberger, supra, is not important. It is sufficient that we consider the rule in the Hurd case to be a correct one to apply under the circumstances here present, and since the trial court apparently did not do so, it fell into error.

The court in a memorandum opinion which it filed stated that appellants asserted four changed conditions as follows: (1) the new highway and increased activity along it catering to tourists, (2) an increase in permanent residents, (3) abandonment of the railroad which formerly served the town, and (4) the location of the highway so as to make Block 1 geographically a part of North Cloudcroft, and then concluded that these conditions all were in existence in 1951 when the previous case was heard, and that there had been "no material increase in their impact on the community since that time." This was incorporated in Finding 16, quoted above.

The court did not note—at least he did not mention—the following additional facts proven to have occurred since 1953, which appellants assert must be considered along with the other changes which occurred before that date: (1) The highway has been paved with greatly increased traffic thereon, (2) conversion of the building on the southeast corner of Block 1 into a cafe, (3) construction of the City Hall on the property, (4) use of the property as a parking lot for the benefit of the businesses in North Cloudcroft and for trucks of all kinds, and (5) occasional use of the property for other commercial activities as for example a place from which milk was distributed by Price's Creameries for some two years. To say the least, these additional items should have been considered by the court together with changes present in 1951, and a determination made as to whether the restrictions should continue to be maintained on Block 1.

In view of our disposition of this point we do not believe it necessary to consider or discuss appellants' second point.

We rule that appellants' Point III is without merit.

■ As to Point IV, whether or not the court erred in permitting intervention of owners of property in North Cloudcroft, it does not appear that appellants were prejudiced or injured thereby. Several of the intervenors owned property in Cloudcroft as well, and their right of intervention is

clear. That others concerning whom there may have been a question as to their interest were also permitted to intervene would seem to be immaterial under the circumstances.

In the light of what we have said concerning Point I, the cause is remanded to the district court with instructions to reinstate the same on the docket and to proceed in a manner not inconsistent herewith.

It is so ordered.

CARMODY and CHAVEZ, JJ., concur.

COMPTON, C. J., dissenting.

NOBLE, J., not participating.

COMPTON, Chief Justice (dissenting).

The judgment reaches us presumptively correct and I would affirm.

If I understand correctly, the judgment is being reversed principally because the court did not consider changed conditions since 1900, the date the townsite was platted, in determining whether the restrictions should be removed. As I construe the findings, this is just what the court did. In any event, the record does not show that he did not do so.

The majority having reached a different conclusion, I dissent.